UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WANDA FAY BURDEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Case Number 2:13-cv-2055-SLB** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Wanda Fay Burden brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her applications for a period of disability, disability insurance benefits ["DIB"], and supplemental security income ["SSI"]. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

On June 9, 2010, plaintiff filed one application for a period of disability and DIB and another application for SSI, alleging a disability onset date of August 15, 2009 in both. (R. 95, 99.)[1] These applications were denied on September 2, 2010 by the Social Security Administration ["SSA"], (R. 79), and plaintiff subsequently requested a hearing before an

---

[1] Reference to a document number, ("Doc.___"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.___").

Administrative Law Judge ["ALJ"], which was held on March 15, 2010, (R. 35). After the hearing, the ALJ found that plaintiff was capable of making a vocational adjustment to other occupations, such as packager of small parts, storage facility clerk, and marker of semi-conductor wafers, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 29.) In light of these findings, the ALJ denied plaintiff's request for a period of disability, DIB, and SSI on March 28, 2012. (*Id.*)

Plaintiff petitioned the Appeals Council to review the ALJ's decision, and on September 11, 2013, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security. (R. 1.) Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on November 12, 2013. (Doc. 1.)

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is

reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A. THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for DIB or SSI.[2] *See* 20 C.F.R. § 404.1520(a)(1)-

---

[2] The Regulations state:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. . . . If we can find that you are disabled or not disabled at a step, we make our determination or decision and do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.

(2); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). For the purposes of this evaluation, the meaning of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant

---

20 C.F.R. § 404.1520(a)(4).

[3] The Regulations define "substantial gainful activity":

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
>
> (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since August 15, 2009, the alleged onset date. (R. 20.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find

---

[4] Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*." 11th Cir. R. 36-2 (emphasis added).

that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).

An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[5] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). When an impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," it will be classified as non-severe. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* SSR 85-28, 1985 WL 56856 (1985). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

---

[5] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simply instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

The ALJ found that plaintiff had severe impairments of "chronic back pain, asthma, eczema, and depression," (R. 20), and a non-severe impairment of carpal tunnel syndrome, (R. 21).

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. App'x. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 21.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner

7

"will first compare [the Commissioner's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find that she is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff has a high school education and was 43 years old, which is defined as a younger individual, on the alleged onset date. (R. 28.) The ALJ also found that plaintiff was unable to perform any past relevant work. (*Id.*) The ALJ made the following findings regarding plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except she should not be exposed to extremes of cold, heat, wetness, humidity, dust, odors, fumes, chemicals or anything that would irritate her asthma; is unable to work around unprotected heights or dangerous or moving machinery; no ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, and crouch; no squatting or crawling; no climbing of ramps or stairs; can perform simple, but not non-complex, jobs; can maintain attention and concentration for two hours at a time to complete an 8-hour day, provided all customary breaks are given; contact with the general public should be non-intensive and infrequent; would do best in a well-spaced work environment; supervision should be supportive and non-threatening; and changes to the work setting should be gradual, well-explained and infrequent.

(R. 23.)

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant disabled. 20 C.F.R. § 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist in the national economy that plaintiff could perform, considering her RFC, age, education, and work experience. The VE testified that an individual with plaintiff's limitations and vocational factors could perform the jobs of packager of small parts, storage facility clerk, and marker of semi-conductor wafers, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 67.) Because the ALJ found that jobs consistent

9

with plaintiff's RFC and vocational factors exist in significant numbers, the ALJ found that plaintiff was not disabled. (R. 29.)

## B. MS. BURDEN'S CLAIMS

Plaintiff argues that the ALJ's RFC findings are improperly based on a rejection of VE testimony and medical source opinions by Dr. Douglas and Dr. Williams, (Doc. 10 at 6), and that the ALJ erred by not obtaining a medical source opinion ("MSO") or a consultative examination ("CE") to further develop the record, (*id.* at 8-10). Upon reviewing the record and the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

### 1. ALJ's Consideration of VE Testimony and Dr. Douglas's Opinion

Plaintiff argues that the ALJ improperly rejected VE testimony regarding frequent breaks and a MSO in which Dr. Christopher Douglas opined that plaintiff would require frequent breaks during work. (Doc. 10 at 6-7.) Dr. Douglas examined plaintiff on July 15, 2010 for her chief complaints of back pain and asthma. (R. 304.) Dr. Douglas reported that plaintiff had an unstressed gait, that she was able to perform tandem gait, heel-toe walking without assistance, that plaintiff used minimal effort to bend but had difficulty squatting due to pain, and that plaintiff had 5/5 muscle strength in all muscle groups. (R. 306.) He also noted that plaintiff had no increased "work of breathing" or wheezes. (*Id.*) In assessing plaintiff's limitations, Dr. Douglas opined that plaintiff "could stand or walk for 6-8 hours during an 8 hour day with frequent breaks [and] . . . could sit for 8 hours with frequent breaks." (R. 307.) He recommended that plaintiff avoid heavy lifting to prevent worsening

of her musculoskeletal pain. (*Id.*) The VE testified that "frequent breaks" usually refer to more than the three customary breaks given to unskilled workers, which consist of a morning, lunch, and afternoon break. (R. 70.)

First, there is no evidence that the ALJ rejected the VE's testimony regarding the effect of frequent breaks on job availability; rather, the ALJ simply found that plaintiff did not require frequent breaks. The ALJ gave Dr. Douglas's opinion only "good weight," finding that Dr. Douglas's exam of plaintiff did not support his statement that plaintiff would require frequent breaks. (R. 27.) An ALJ is entitled to consider whether a medical source supports his opinion through medical signs or laboratory findings and whether the medical source's opinion is consistent with the entire record. *See* 20 C.F.R. § 404.1527(c)(3), (4); 20 C.F.R. § 416.927(c)(3), (4). In reaching his finding, the ALJ relied on several aspects of the exam, including plaintiff's ability to perform tandem gait, heel-toe walking, plaintiff's 5/5 muscle strength in all muscle groups, and plaintiff's lack of increased "work of breathing" or wheezes. (*Id.*) The court finds that the ALJ relied on substantial evidence in discounting Dr. Douglas's opinion that plaintiff requires frequent breaks.

### 2. ALJ's Consideration of VE Testimony and Dr. Williams's Opinion

Plaintiff also contends that the ALJ erred in rejecting VE testimony regarding work absences and Dr. Samuel Williams's opinion that plaintiff would have one to two absences per month on average. (Doc. 10 at 7-8.) Specifically, plaintiff argues that the ALJ erred in giving Dr. Williams's opinion significant weight without explaining why the ALJ rejected

his statement that plaintiff would require one to two absences per month and without accounting for plaintiff's expected absenteeism in the RFC assessment. (*Id.*)

Dr. Williams, a state agency medical consultant, completed a mental RFC assessment based on a review of plaintiff's medical records. (*See* R. 328.) Dr. Williams reported that plaintiff was able to understand, remember, and carry out simple instructions and tasks but that she would have difficulty with detailed instructions. (R. 330.) He also reported that plaintiff could maintain concentration for two hours with all customary breaks and that a well-spaced work environment would enhance plaintiff's ability to concentrate. (*Id.*) Regarding social limitations, Dr. Williams recommended that plaintiff have infrequent and non-intensive contact with the public and that plaintiff receive tactful, constructive, and non-threatening supervision. (*Id.*) Dr. Williams opined that plaintiff's psychological symptoms likely would cause her to miss one to two days of work per month. (*Id.*)

The VE testified that the unskilled work for which plaintiff qualified permitted only one absence per month on average and that any more absences would preclude work. (R. 68-69.) The VE based this testimony on personal experience, as the Dictionary of Occupational Titles does not address work attendance requirements. (R. 69.) Without discussing any particular finding from Dr. Williams's opinion, the ALJ gave Dr. Williams's opinion significant weight, stating that Dr. Williams provided specific reasons for his findings and that his findings were consistent with the record as a whole and with the ALJ's RFC assessment. (R. 27.) The ALJ did not address plaintiff's expected work absenteeism in his

RFC assessment, (*see* R. 23), but he implicitly found that plaintiff would miss only one day per month on average, by finding that plaintiff could perform the jobs that the VE testified would not be available if plaintiff missed more than one day per month.

Defendant responds to plaintiff's argument by pointing out that plaintiff has not cited law requiring "the ALJ to accept each and every limitations [sic] set forth in the assessment," and that plaintiff has not cited "any treatment records or other evidence to support a conclusion that she would be absent from work more than one day per month." (Doc. 11 at 10.) The court agrees that, in assigning Dr. Williams's opinion great weight, the ALJ was not required to adopt each and every finding in the opinion. "[An] ALJ is free to adopt [a] medical source opinion in his RFC determination; however, he is not required to do so." *Pratt v. Astrue*, Civil Action No. 2:12-CV-1794-RDP, 2013 WL 4056220, at *7 (N.D. Ala. Aug. 12, 2013). Furthermore,

> [e]ven though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing:  A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p. The court finds that the ALJ accepted the VE's testimony on the issue of absences and that the ALJ was not required to adopt Dr. Williams's opinion that plaintiff would miss more than one day per month or explain plaintiff's expected work absenteeism in the RFC assessment.

13

### 3. Development of the Record

Lastly, plaintiff argues that the ALJ erred by not obtaining a MSO or CE to further develop the record. (Doc. 10 at 8-10.) Plaintiff contends that the ALJ needed to develop the record in order to make an informed decision and that it was particularly important to do so in this case because plaintiff had a Veterans Affairs ("VA") disability rating that was entitled to great weight. (*Id.* at 10.)

"Although the ALJ should give the VA's disability rating 'great weight,' the rating is not binding on the Commissioner." *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 856 (11th Cir. 2013). "If an ALJ rejects a VA disability rating or gives a VA rating less than considerable weight, she must provide sufficient justification for doing so." *Rainwater v. Colvin*, Civil Action No. 5:12-CV-337 (MTT), 2013 WL 4763742, at *4 (M.D. Ga. Sept. 4, 2013). The ALJ discussed plaintiff's VA disability rating, by first noting that plaintiff "has service connected/rated disabilities of 30% for bronchial asthma, 20% for intervertebral disc syndrome, 20% for limited motion of arm, and 10% for limited flexion of each knee." (R. 26; *see* R. 356.) Of those impairments, plaintiff has only alleged disability based on asthma and back pain. (*See* R. 131.)

The ALJ explained the limited weight he gave to plaintiff's VA disability rating, stating:

> [The] treatment records from the VA do not support the severity of pain as alleged by the claimant. The results from two sets of x-rays of the claimant's lumbar spine are in evidence, but they only show mild degenerative disc disease. The claimant did not make any significant complaints of back pain,

> depression or anxiety during her visits to the VA. Likewise, her medical records do not show that she was ever treated for an exacerbation of her asthma, either at the VA or in the emergency room. The claimant's VA records show that the claimant's physical examinations were essentially normal, aside from the skin problems associated with her eczema. Those records also show that the claimant did not have any physical or cognitive limitations or any emotional or psychological factors associated with her health and/or treatment.

(R. 26.) Defendant responds to plaintiff's contention that the ALJ erred in not assigning more weight to the VA disability rating by pointing out that "[t]he VA rating provides no indication of the evidence that allegedly supported the rating, no discussion of work-related limitations, and no evaluation of jobs [p]laintiff could or could not do." (R. 11 at 14; *see* R. 356.) The ALJ thoroughly considered plaintiff's VA disability rating and gave sufficient reasons for assigning little weight to the rating. The ALJ cited the lack of complaints to the VA regarding plaintiff's back pain or asthma and noted that x-rays of plaintiff's back show only mild degenerative disc disease. The ALJ relied on substantial evidence in discounting plaintiff's VA rating.

Furthermore, the court finds that the ALJ was not required to development the record by obtaining another MSO or CE. "The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citing 20 C.F.R. § 404.1519a(b)). The ALJ found that plaintiff was capable of performing light work with several postural, environmental, and social restrictions by relying on substantial evidence, including medical opinions, medical

records, and plaintiff's extensive daily activities, such as cleaning, driving, cooking, and shopping. (*See* R. 24-28.) For example, in addressing plaintiff's depression, the ALJ considered that plaintiff was screened for depression and post-traumatic stress disorder in June 2009 and scored zero on both screenings, thereby indicating no problems. (R. 24, 265.) Additionally, Dr. William Beidleman performed a psychological evaluation of plaintiff in July 2010, finding that while plaintiff described herself as socially withdrawn, she did not appear to have generalized anxiety disorder and could function independently. (R. 26, 310.) Dr. Beidleman assessed plaintiff with a Global Assessment of Functioning score of 60, which indicates that plaintiff had "moderate symptoms or moderate difficulty in social, occupational, or school functioning." (*Id.*)

Regarding plaintiff's low back pain and asthma, the ALJ found that plaintiff reported problems in July and September 2010 and May 2011. (R. 24-25.) After each visit, plaintiff was prescribed Lortab and either an Albuterol nebulizer or a formoterol inhaler, and after the September 2010 visit, plaintiff was prescribed a corset for her back. (*See* R. 357, 377, 395, 405.) Given that plaintiff's back pain and asthma were largely controlled by prescription medication, the ALJ's RFC assessment adequately accounted for plaintiff's impairments through limitations, such as the environmental limitations restricting exposure to "humidity, dust, odors, fumes, chemicals or anything that would irritate [plaintiff's] asthma" and the limitations of "no squatting or crawling [and] no climbing of ramps or stairs." (*See* R. 23.)

Plaintiff has not shown that the ALJ needed more information to make an informed decision, and therefore, the court finds no reversible error.

## IV. CONCLUSION

Based on the reasons set forth above, the decision of the ALJ, as adopted by the Commissioner, denying plaintiff's claim for a period of disability, DIB, and SSI is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 18th day of March, 2015.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE